UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMY D. McGOWAN,
                            Plaintiff

-vs-

MICHAEL J. ASTRUE,
Commissioner of Social Security,
                            Defendant.
_____

DECISION AND ORDER

07-CV-6494 CJS

APPEARANCES

For the Plaintiff:             Paul M. Ryther, Esq.
                                 97 Main Street, P.O. Box 278
                                 East Bloomfield, New York 14443

For the Defendant:         Christopher v. Taffe, Esq.
                                 Assistant United States Attorney
                                 100 State Street
                                 Rochester, New York 14614

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant"), which denied plaintiff Amy McGowan's ("Plaintiff") application for disability insurance and supplemental security income benefits. Now before the Court is Defendant's motion for judgment on the pleadings (Docket #10), and Plaintiff's cross-motion for an order reversing Defendant's decision and remanding the matter for calculation of benefits, or, in the alternative, remanding the case for further administrative proceedings (Docket #11). For the reasons that follow, Defendant's application is denied, Plaintiff's application is granted in part and denied in part, and this matter is

1

remanded to the Commissioner for further administrative proceedings.

## PROCEDURAL HISTORY

On December 9, 2002, Plaintiff applied for disability and supplemental security income benefits, claiming to be disabled due to "bipolar affective, [sic] depression, panic attacks."(154) [1] Plaintiff later claimed that she was also disabled due to fibromyalgia. Plaintiff remained insured for disability benefits through March 31, 2006. The Commissioner denied Plaintiff's application, and she requested a hearing before an Administrative Law Judge ("ALJ"). On March 8, 2005, a hearing was held before ALJ John P. Costello, who found that Plaintiff was not disabled. Plaintiff appealed, and the Appeals Council remanded the case for further administrative proceedings. On October 10, 2006, the ALJ conducted a supplemental hearing, and on November 22, 2006, the ALJ issued a decision, again finding that Plaintiff was not disabled. Plaintiff appealed, and on August 8, 2007, the Appeals Council denied Plaintiff's request for review. On October 10, 2007, Plaintiff commenced the subject action. Subsequently, with the Plaintiff's consent, the Court granted Defendant several extensions of time to file dispositive motions. On December 12, 2008, Defendant filed the subject motion for judgment on the pleadings, and on December 15, 2008, Plaintiff filed the subject cross-motion for the same relief.

## VOCATIONAL HISTORY

Plaintiff has worked as a cashier, food preparer, factory assembly worker, and over-the-road truck driver. (196). Plaintiff's longest period of employment was the truck-

---

[1]Unless otherwise noted, citations are to the Administrative Record.

driving job, which lasted approximately three years, and involved driving 18-wheel trucks throughout the United States and Canada. (40, 60). In connection with her work as a truck driver, Plaintiff obtained specialized training and obtained a commercial driver's license. (92,172). Plaintiff has also attended college, and as of the date of the supplemental hearing, she was on track to earn her associate's degree in Graphic Design and Advertising Technology. (44).

## MEDICAL EVIDENCE

Plaintiff's medical history was summarized in the parties' submissions and need not be repeated here. It is sufficient for purposes of this Decision and Order to note the following facts. Plaintiff has been diagnosed as having various physical and mental ailments including hypothyroidism, fibromyalgia, depression, anxiety, and personality disorder, NOS ("not otherwise specified"). Plaintiff's primary care physician was Jeffrey C. Long, M.D. ("Long"). On March 8, 2004, Long stated that Plaintiff's thyroid function tests were normal. (379). On June 25, 2006, Long reported that Plaintiff's hypothyroidism was controlled with medication. On February 17, 2006, Plaintiff told Long that she had stopped taking medication for bipolar disease and depression, and that she did not feel depressed. Plaintiff also told Long that she was taking medications for difficulty sleeping (Ambien) and anxiety (Ativan) very sparingly.

However, Plaintiff continued to complain of problems from fibromyalgia. In that regard, in November 2003, Plaintiff told Long that she had "a lot of neck and shoulder pain, which is fairly chronic." (381). Long examined Plaintiff and reported "tender points and trigger points in the trapezius bilaterally up to the base of the skull and down to the lower thoracic spine." *Id*. On March 8, 2004, Long noted that Plaintiff was continuing to

3

complain of "chronic pain which is relatively mild" in her neck and shoulders. (379). Upon examination, Long found that Plaintiff had "some tenderness in her trapezius and up into the base of her skull but no true trigger points." *Id*. On July 27, 2004, Plaintiff told Long that her pain was worsening, with "increasing pain at the base of her neck and in her upper back." (375). Long observed that Plaintiff had "a lot of tenderness in trigger points at the based of [the skull], across the shoulders and at the base of the neck." *Id*.

On February 14, 2005, Long completed a "Physical Capacities Evaluation" for Plaintiff, stating that she could sit for one hour without interruption and for six hours in an eight-hour workday, and that she could walk or stand for up to thirty minutes at a time, and for up to four hours in an eight-hour workday. (442). Long stated that Plaintiff could frequently lift and carry up to ten pounds, and occasionally lift and carry up to twenty-five pounds. *Id*. Long also indicated that Plaintiff was "totally" restricted from twisting, turning, and bending at the waist, hips, and neck. *Id*. On March 7, 2005, Long supplemented his report by indicating that his earlier notations were "estimates," and that, "[f]ibromyalgia is a disease with waxing and waning symptoms. There are many days when [Plaintiff] would not be able to accomplish the physical tasks noted on the sheet, however, other day[s,] she may do fine with them. Specifically, there may be days she would not lift 20 or 25 pounds in all and repetitive lifting of 10 pounds would be a problem. She also may have problems with six hours of sitting on many days." (441).

On June 25, 2006, Long provided another statement regarding Plaintiff's ability

4

to perform work-related activities. (450-453). Long stated that Plaintiff could frequently lift ten pounds, occasionally lift 20 pounds, and stand and/or walk for at least two hours in an eight-hour workday. (450). Long stated that Plaintiff would need to periodically alternate between sitting and standing, but he did not specifically indicate how long Plaintiff could sit, except to state: "Has fibromyalgia pain. Prolonged sitting or standing requires position change." (451). Long essentially stated that Plaintiff had unlimited ability to use her hands for handling, fingering, and feeling, and that she could frequently reach in all directions. Long indicated that his findings were "based on [Plaintiff's] reported symptoms. [Physical examination] findings are helpful in confirming [diagnosis] of fibromyalgia but show little about degree of disability." (453).

On July 10, 2006, Plaintiff's psychiatrist, Rida Y. Rizk, M.D. ("Rizk"), prepared a report. Rizk indicated that he had seen Plaintiff on two occasions, April 10, 2006 and July 10, 2006. Rizk diagnosed Plaintiff as follows: "Axis 1. Deferred. Axis 2. Personality Disorder NOS [not otherwise specified]. Axis 3. Fibromyalgia and Hypothyroidism." (463). Such diagnosis apparently includes aspects of anxiety and depression. (468-470). Rizk stated that Plaintiff had no limitation on her ability to understand and remember short and simple instructions, and a slight limitation on her ability to carry out simple instructions. (464). Rizk stated that Plaintiff would have a moderate limitation in her ability to make judgments on simple work-related decisions. *Id*. Rizk indicated that he arrived at those conclusions based on "patient's interview." *Id*. Rizk also reported that Plaintiff would have a "marked" restriction on her ability to interact appropriately with co-workers, and "extreme" restrictions on her ability to response to work pressures and changes in routine in a work setting. (465). Rizk

5

explained that he arrived at those conclusions from "[t]he patient's evaluation of her own functioning at school." *Id*.

STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive." The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

For purposes of the Social Security Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Schaal*, 134 F.3d at 501.

> The SSA has promulgated administrative regulations for determining when a claimant meets this definition. First, the SSA considers whether the claimant is currently engaged in substantial gainful employment. If not, then the SSA considers whether the claimant has a "severe impairment" that significantly limits the "ability to do basic work activities. If the claimant does suffer such an impairment, then the SSA determines whether this impairment is one of those listed in Appendix 1 of the regulations. If the claimant's impairment is one of those listed, the SSA will presume the claimant to be disabled. If the impairment is not so listed, then the SSA must determine whether the claimant possesses the "residual functional capacity" to perform his or her past relevant work. Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing "any other work."

*Schaal*, 134 F.3d at 501 (Citations omitted).  At step five of the five-step analysis above, the Commissioner may carry his burden by resorting to the Medical Vocational Guidelines or "grids" found at 20 C.F.R. Pt. 404, Subpart P, Appendix 2. *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996)(citation omitted); *see also*, SSR 83-10 (Stating that in the grids, "the only impairment-caused limitations considered in each rule are exertional limitations.")  However, if a claimant has nonexertional impairments which "significantly limit the range of work permitted by his exertional limitations," then the Commissioner cannot rely upon the grids, and instead "must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain or perform."[2] *Pratts v. Chater*, 94 F.3d at 39; *see also*, 20 C.F.R. § 416.969a(d).[3]

Under the Commissioner's regulations, a treating physician's opinion is entitled to controlling weight, provided that it is well-supported in the record:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

---

[2]"Exertional limitations" are those which affect an applicant's ability to meet the strength demands of jobs, such as sitting, standing, walking, lifting, carrying, pushing, and pulling.  "Non-exertional limitations" are those which affect an applicant's ability to meet job demands other than strength demands, such as anxiety, depression, inability to concentrate, inability to understand, inability to remember, inability to tolerate dust or fumes, as well as manipulative or postural limitations, such as the inability to reach, handle, stoop, climb, crawl, or crouch. 20 C.F.R. 416.969a.

[3]20 C.F.R. § 416.969a(d) provides, in relevant part, that, "[w]hen the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect your ability to meet both the strength [exertional] and demands of jobs other than the strength demands [nonexertional], we consider that you have a combination of exertional and nonexertional limitations or restrictions. . . . [W]e will not directly apply the rules in appendix 2 [the grids] unless there is a rule that directs a conclusion that you are disabled based upon your strength limitations; otherwise the rule provides a framework to guide our decision."

20 C.F.R. § 416.927(d)(2); 20 C.F.R. § 404.1527(d)(2). However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)(*citing* 20 C.F.R. § 404.1527(d)(4)). Nevertheless,

> [a]n ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion. 20 C.F.R. § 404.1527(d)(2). Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id*. The regulations also specify that the Commissioner 'will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion.' *Id*.; *accord* 20 C.F.R. § 416.927(d)(2); *see also Schaal*, 134 F.3d at 503-504 (stating that the Commissioner must provide a claimant with "good reasons" for the lack of weight attributed to a treating physician's opinion).

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

Administrative Law Judges are required to evaluate a claimant's credibility concerning pain according to the factors set forth in 20 C.F.R. § 404.1529, which states in relevant part:

> In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. By objective medical evidence, we mean medical signs and laboratory findings as defined in § 404.1528 (b) and (c). By other evidence, we mean the kinds of evidence described in §§ 404.1512(b) (2) through (6) and 404.1513(b) (1), (4), and (5) and (e). These include statements or reports from you, your treating or examining physician or psychologist, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing

8

> how your impairment(s) and any related symptoms affect your ability to
> work. We will consider all of your statements about your symptoms, such
> as pain, and any description you, your physician, your psychologist, or
> other persons may provide about how the symptoms affect your activities
> of daily living and your ability to work.
>
> ***
>
> In evaluating the intensity and persistence of your symptoms, including
> pain, we will consider all of the available evidence, including your medical
> history, the medical signs and laboratory findings and statements about
> how your symptoms affect you. (Section 404.1527 explains how we
> consider opinions of your treating source and other medical opinions on
> the existence and severity of your symptoms, such as pain.) We will then
> determine the extent to which your alleged functional limitations and
> restrictions due to pain or other symptoms can reasonably be accepted as
> consistent with the medical signs and laboratory findings and other
> evidence to decide how your symptoms affect your ability to work.

20 C.F.R. § 404.1529(a). The regulation further states, in pertinent part:

> Factors relevant to your symptoms, such as pain, which we will consider
> include:
>
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other
> symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication
> you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for
> relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other
> symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every
> hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions
> due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

## THE ALJ'S DECISION

At the first step of the five-step sequential analysis described above, the ALJ found that plaintiff was not engaged in substantial gainful employment. At the second step of the analysis, the ALJ found that plaintiff had the following severe impairments:

fibromyalgia; obesity; hypothyroidism, well-controlled with medication; and depression. (17). At step three of the sequential analysis, the ALJ found that Plaintiff did not have a listed impairment.

At step four of the analysis, the ALJ found that Plaintiff could perform her past relevant work as a "production sub assembly worker." (23). In making that determination, the ALJ found that Plaintiff had the RFC to perform

> the full range of sedentary work. (lift and/or carry up to ten pounds, stand and/or walk up to two hours, sit for up to six hours, and push and/or pull up to ten pounds) with the following additional limitations: she is limited to work requiring sufficient attention and concentration to understand, remember, and follow simple instructions; occasional interaction with coworkers; occasional reaching above shoulder level; stoop; [sic] occasional crawl, [sic] stooping and balancing; and no climbing scaffolds or ladders.

(18). As part of his RFC assessment, the ALJ reviewed the medical evidence. With one exception[4], the ALJ did not expressly state which of the medical opinions he accepted, although, it appears that he accepted Long's and Rizk's opinions for the most part. (19-21). However, the ALJ appears to have rejected those opinions to the extent that they were based on Plaintiff's subjective complaints and statements. For example, in discussing Long's report dated June 26, 2006, the ALJ wrote: "Significantly, the doctor noted that these limitations were all based *upon the claimant's history of reported symptoms*." (emphasis in original). Similarly, in reviewing Rizk's report dated July 10, 2006, the ALJ wrote: "Again of importance to my evaluation, in response to the question

---

[4]The ALJ stated that the opinion of Dr. Edward Sang ("Sang"), a medical expert retained by the Commissioner who testified at the hearing, was "entitled to little weight in that he has never examined the claimant but instead merely conducted a review of the documentary evidence and heard her hearing testimony." (22).

'what supports this assessment,' Dr. Rizk wrote: '*The patient's evaluation of her own functioning at school.*" (21) (Emphasis in original). More specifically, the ALJ appears to have rejected Long's opinion that Plaintiff was unable to bend her neck, stating that Plaintiff's college course work involved "significant use of a keyboard, mouse and computer and require[d] bending and flexing of the neck to see the screen." (22). The ALJ further found that Plaintiff's fibromyalgia was not as severe as Plaintiff complained, since Plaintiff took only a moderate amount of pain medication, and that apart from such medication, Plaintiff did not receive "any special medical treatment" for fibromyalgia. *Id*. The ALJ also concluded that Plaintiff's "activities of daily living belie[d] her assertion that she ha[d] disabling depression." (22). Further, the ALJ apparently rejected Rizk's opinion that Plaintiff had"extreme" restrictions on her ability to response to work pressures and changes in routine in a work setting.[5]

Although, as discussed above, the ALJ concluded, at step four of the five-step sequential analysis, that Plaintiff could perform her past relevant work, he also found, alternatively, at step five of the analysis, that Plaintiff could perform other work in the national economy. Specifically, the ALJ found, based on Steinbrenner's testimony, that Plaintiff could work as a ticket seller and as a self-serve gas station attendant. (24). Notably, Steinbrenner testified that Plaintiff could work at those jobs even if she could not bend her neck. (70-73). On that point, however, Steinbrenner's opinion differed from that of Steve Matthews ("Matthews"), the Vocational Expert who testified at Plaintiff's

---

[5]The Vocational Expert who testified at the second hearing, Jay Steinbrenner ("Steinbrenner"), testified that a person with such limitations would not be able to work (74), and the ALJ did not indicate that he was rejecting Steinbrenner's opinion on that point.

11

original hearing on March 8, 2005. (123). According to Matthews, if Plaintiff was unable to bend her neck, she could not perform any work. *Id.*[6]

ANALYSIS

Plaintiff essentially maintains that the ALJ erred in three respects: 1) he failed to give controlling weight to Rizk's opinion that Plaintiff had no useful ability to respond to work pressure[7]; 2) he failed to give controlling weight to Long's opinion that Plaintiff was unable to bend her neck; and 3) he failed to resolve the conflict between Steinbrenner's testimony and Matthew's testimony, concerning Plaintiff's ability to work if she could not bend her neck.

With regard to the first two grounds, the ALJ appears to have rejected the doctors' opinions partly because they were based largely on Plaintiff's self-reported symptoms. The Commissioner's Regulations provide that an impairment

> must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms.

20 C.F.R. § 404.1508. The Regulations further define the terms "symptoms," "signs," and "laboratory findings" as follows:

(a) Symptoms are your own description of your physical or mental

---

[6]The hearing transcript does not contain an actual question from the ALJ to Matthews as to whether Plaintiff could perform sedentary work if she was unable to bend her neck. Instead, there is an "inaudible" question by the ALJ, to which Matthews responded in the negative. Plaintiff's counsel has submitted an affidavit in which he states, from his personal recollection, that the inaudible question of the transcript involved the ALJ asking whether there were any sedentary jobs that the Plaintiff could perform if she was unable to bend her neck. Defendant has not challenged Plaintiff's Counsel's affidavit.

[7]At oral argument, Defendant's counsel stated that if Rizk's opinion in that regard was given controlling weight, that Plaintiff would necessarily be disabled.

impairment. Your statements alone are not enough to establish that there is a physical or menta

(b) Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated.

(c) Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests.

20 C.F.R. § 404.1528; *see also, Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("[A] psychological opinion may rest either on observed signs *and* symptoms or on psychological tests.") (emphasis added). Here, it is not clear whether Long's and Rizk's opinions, concerning Plaintiff's ability to bend her neck and respond to job stress, respectively, were supported by symptoms, signs, and laboratory findings, or whether they were based on Plaintiff's statements alone. Moreover, it is unclear whether Long and Rizk were aware of the extent of Plaintiff's actual activities, as she described them at the hearing, when they rendered their opinions. Specifically, it is unclear whether they knew that Plaintiff was successfully attending college and planning a career. Additionally, it is unclear why Long mentioned the neck-bending restriction in his first report but not his second report. Finally, it is unclear whether the ALJ intended to reject Rizk's diagnosis of "personality disorder nos," since the ALJ did not include that as one of plaintiff's impairments. Accordingly, the Court finds that further development of the record is necessary. Moreover, the ALJ should clarify the weight that he is giving to the

13

medical opinions.

Additionally as to Plaintiff's alleged inability to bend her neck, the ALJ rejected Long's opinion, and determined that Plaintiff was capable of moving her neck, since she was able to complete her college assignments, which involved working on a computer and drawing. However, the record contains no evidence concerning the actual physical demands of Plaintiff's college assignments. The ALJ did not ask Plaintiff about her ability to bend her neck, nor did he otherwise develop the record on that point. Accordingly, additional administrative proceedings are necessary for the ALJ to develop the record on that issue. If the ALJ subsequently concludes that Plaintiff is unable to bend her neck, then the ALJ should resolve the conflict between Steinbrenner's testimony and Matthews's testimony, concerning Plaintiff's ability to perform sedentary work with that restriction.

CONCLUSION

Defendant's motion for judgment on the pleadings (Docket #10) is denied. Plaintiff's cross-motion (Docket #11) is denied to the extent that it seeks a remand for calculation of benefits[8], and is granted to the extent that it seems a remand for further administrative proceedings. This matter is remanded to the Commissioner for a

---

[8]Remand for calculation of benefits would not be appropriate in this case. *See, Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004) ("In deciding whether a remand is the proper remedy, we have stated that where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate. That is, when further findings would so plainly help to assure the proper disposition of the claim, we believe that remand is particularly appropriate. On the other hand, where this Court has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, we have opted simply to remand for a calculation of benefits.") (citations and internal quotations omitted).

rehearing pursuant to 42 U.S.C. § 405(g), sentence four.

So Ordered.

Dated: Rochester, New York
June 6, 2009

                                          ENTER:

                                          /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge